Luigana **TERIO**,[1] Plaintiff,

v.

Caspar **WEINBERGER,** Secretary of Health, Education and Welfare of the United States of America, Defendant.

No. Civ-74-259.

United States District Court, W. D. New York.

March 22, 1976.

---

1. This is the spelling of plaintiff's name as it appears on the complaint. However, the court points out that throughout the administrative hearing record, plaintiff's name appears as "Luigina Terio."

210

Stanley Jay Keysa, Lancaster, N. Y., for plaintiff.

Richard J. Arcara, U. S. Atty., Buffalo, N. Y. (Richard E. Mellenger, Buffalo, N. Y., of Counsel), for the Government.

CURTIN, Chief Judge.

This is a suit under § 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Secretary denying the plaintiff's application for the establishment of a period of disability under § 216(i) of the Act, 42 U.S.C. § 416(i), and for disability insurance benefits as provided by § 223 of the Act, 42 U.S.C. § 423.

The plaintiff filed an application for disability benefits on December 8, 1972 alleging that she became unable to work on June 25, 1971, at age 55. The application was initially denied on January 25, 1973 and, on reconsideration, denied again on August 6, 1973. A hearing before an administrative law judge was held on January 10, 1974 and was attended by plaintiff, her attorney and plaintiff's daughter, who acted as interpreter. The administrative law judge found plaintiff was not disabled. This decision was approved by the Appeals Council on April 2, 1974 and therefore

became the final decision of the Secretary of Health, Education and Welfare. Plaintiff met the earnings requirement on June 25, 1971, the alleged onset date of her disability, and will continue to meet them until September 30, 1976. Defendant moves for summary judgment. Plaintiff requests the court to remand to the Secretary for further hearings.

Plaintiff, a married woman, emigrated to the United States on March 18, 1963. She completed four or five years of education in Italy. Although she can speak and read Italian, plaintiff neither reads nor writes and speaks only a little English. She was a farmer in Italy and from July, 1964 until June, 1971 plaintiff refinished men's jackets by hand.

Plaintiff complained of pain in her back and right leg following a fall at work on June 25, 1971. When her pain persisted after traction, a lumbar myelogram was performed on July 22, 1971 which showed a defect at the L4–5 level on the right. A partial laminectomy was performed on July 29, 1971. Claimant's postoperative course was satisfactory until her fifth postoperative day when she developed an acute pulmonary embolism. She subsequently developed left chest pain and was placed in the Intensive Care Unit on medication. She had episodes of auricular fibrillation and her right leg was approximately ¾ inch larger than her left. Claimant's condition thereafter gradually improved and she was discharged on August 28, 1971.

At the time of the hearing, plaintiff testified that she was unable either to work or to do any substantial housework, and that her husband and daughter had to do the cooking, laundering and cleaning. This testimony was corroborated by her daughter.

The Secretary found:

The claimant was not prevented from engaging in any substantial gainful activity, such as her aforesaid customary job, by any medically determinable physical or mental impairment, singly or in combination, for any continuous period beginning on or before [January 11, 1974] the date of [the administrative law judge's] decision which has lasted or could be expected to last for at least 12 months.

This finding amounts to a conclusion that plaintiff was not disabled within the meaning of the Act. 42 U.S.C. § 423(d)(1)(A).

The question is whether the Secretary's determination that the plaintiff was not disabled is supported by substantial evidence. If it is, the finding is conclusive. 42 U.S.C. § 405(g).

In *Janek v. Celebrezze,* 336 F.2d 828, 833 (3d Cir. 1964), the court said:

. . . the test for disability consists of two parts: (1) a determination of the extent of the applicant's physical or mental impairment, and (2) a determination whether that impairment results in an inability to engage in any substantial gainful activity.

The record contains the medical opinions of three physicians: Dr. Angelo, the physician who treated plaintiff's back and leg; Dr. Repicci, the physician who examined plaintiff "at the state agency's request;" and Dr. Rachow, plaintiff's regular physician, who was not treating plaintiff's back or leg complaints. About January 5, 1973, Dr. Angelo reported that plaintiff could sit and stand for two hours each, walk one-half block, stoop and bend a little and lift up to fifteen pounds. On April 5, 1973, Dr. Angelo said that plaintiff was "partially disabled." Dr. Repicci was of the opinion that, as of May 14, 1973, plaintiff " . . . retains a mild permanent partial impairment . . . ." On April 16, 1973, Dr. Rachow reported that the phlebitis plaintiff suffered with for three years was "not what is keeping her from work, since I considered it well enough for adequate activity as of the first of this year. Her real problem is her back . . . ." This did not contradict the opinions of Drs. Repicci and Angelo; indeed, it would seem to confirm their opinions that plaintiff is partially disabled.

In addition to the above medical evidence, the claimant also complained of

pain. The court may consider subjective evidence to determine plaintiff's disability. *Underwood v. Ribicoff,* 298 F.2d 850, 852 (4th Cir. 1962). In this case, the subjective evidence indicates that plaintiff suffers from pains in her right leg two or three times per day, in her back and chest every two or three days, and the pain radiates up to her head. Though she takes medication for some of these discomforts, they apparently provide only some relief. Plaintiff's daughter corroborates these complaints and adds that plaintiff's leg is swollen "all the time."

Plaintiff's difficulty in eating and sleeping is also corroborated by her daughter. Plaintiff can walk the two blocks to church, but her daughter reports that plaintiff "hangs on to my father . . ." when she returns.

Additionally, the Medical History and Disability Report includes the observations of an interviewer for the Social Security Administration that, on February 28, 1973, plaintiff " . . . walked very slowly. Right leg swollen badly. Stood up at times to relieve pain in back . . . ." Finally, it should be noted that during the hearing the administrative law judge said: "If your mother wants to stand up, she can stand up." This may suggest that even during the hearing the plaintiff had difficulty sitting for prolonged periods of time.

■ When the doctors' evidence is considered along with the subjective evidence presented, it appears that plaintiff has shown satisfactorily that she has a physical impairment. On this record it appears that since the medical opinions expressed by the doctors are not contradicted, the conclusion of the administrative law judge may not stand. *Walston v. Gardner,* 381 F.2d 580 (6th Cir. 1967); *Kennedy v. Finch,* 321 F.Supp. 303, 306 (N.D.Fla.1970).

By establishing that she has a physical impairment, plaintiff has fulfilled the first step of the test set out in *Janek, supra.* The next question according to that test is whether her impairment " . . . results in an inability to en-gage in any substantial gainful activity." A subsidiary question is whether plaintiff can perform her customary job. If she can, then she has failed to establish a disability because she failed to show an inability to engage in any substantial gainful activity. If, however, she cannot perform her old job, she might be able to find other work which is a substantial gainful activity.

■ However, by establishing that she has a physical impairment, plaintiff

. . . has proven the existence of a permanent, although not totally disabling handicap, [and she therefore] "has adduced sufficient evidence to put the burden upon the Secretary to show that a reasonable employment opportunity is available to [her]." *Mankiewicz v. Celebrezze,* 256 F.Supp. 351 (E.D.Pa.1966), citing *Bujnovsky v. Celebrezze,* 343 F.2d 868, 871 (3d Cir. 1964).

Since the Secretary's burden is to show that a reasonable employment opportunity is open to her, and since one such opportunity may be her former job, it would seem to follow that the Secretary must prove the reasonableness of plaintiff's opportunity to return to her customary job.

The administrative law judge concluded that plaintiff " . . . was able to perform her . . . customary job" from June 25, 1971 through January 11, 1974, upon plaintiff's "residual physical capacity." "Residual physical capacity" refers to plaintiff's ability, according to Dr. Angelo's report made sometime around January 5, 1973, to " . . . sit two hours, stand two hours, walk one half block, stoop and bend a little, and lift up to fifteen pounds." The question is whether this conclusion is supported by substantial evidence.

First, the fact that plaintiff could stand for two hours and sit for two hours does not mean plaintiff could perform her customary job which required that she sit and sew jackets [presumably for eight hours per day]. Even if Dr. Angelo's report can reasonably be inter-

preted to mean plaintiff could sit for two consecutive hours and then stand for two consecutive hours, working over the entire four-hour period, plaintiff could still only be expected to work four hours per day, and even then she might not be able to perform her customary job because it required her to sit in order to sew. Plaintiff testified: " . . . After she [sic] finish the coat, she [sic] have to get up, go pick up another coat, sit and sew." Of course, if she could stand and sew, she still could not be expected to work more than four hours per day, unless it is reasonable to expect that over an eight-hour work period plaintiff could alternate between sitting and standing. This expectation would seem, however, to render meaningless Dr. Angelo's evaluation of plaintiff's physical capacities.

Second, the administrative law judge states that Dr. Angelo suggested plaintiff return to work. "She stated that pursuant to the suggestions of Drs. Repicci and Angelo, she returned to work in October 1972 . . . ." The statement of the administrative law judge seems to suggest that Dr. Angelo believed that the plaintiff could work because she was physically capable. The hearing record, however, is at best ambiguous as to what Dr. Angelo meant when he told plaintiff to return to work. At one point, plaintiff reports Dr. Angelo said: " . . . try. See what happens." At another point, plaintiff said: " . . . Dr. Repicci say, go work and Dr. Angelo agree . . . ." This testimony, without some explanation from Dr. Angelo as to his intended meaning, appears to be an insubstantial basis upon which to infer that Dr. Angelo believed plaintiff could return to work.

Dr. Angelo, in a letter dated April 12, 1975 (about one year and three months after the hearing), said: " . . . it was my impression that [plaintiff] could not return to her regular work in which she was required to hand-sew in a prolonged sitting position because of the swelling of her legs." Thus, in attempting to clarify the meaning of his report of April 5, 1973 that plaintiff could perform " . . . sedentary type work or light work activity," Dr. Angelo has indicated that he thought the plaintiff incapable of returning to her customary job.

This letter may be referred to by the court in determining whether to remand the case, as plaintiff has requested. "Although the court is limited to the record in determining whether the findings of the Secretary are supported by substantial evidence, extraneous matters may be considered in determining whether to remand 'on good cause shown' . . . ." *Story v. Richardson*, 356 F.Supp. 1182, 1184 (N.D.Tenn.1972), citing *Sweeney v. Gardner*, 277 F.Supp. 622, 627 (D.C.Mass.1967).

This new evidence constitutes "good cause shown" because it would seem to be probative of the meaning of the expert medical opinion evidence. It has a bearing upon the question of the plaintiff's ability to perform her customary job, or to engage in any substantial gainful activity, questions which the Secretary has resolved, though upon vague and therefore deficient evidence. The requirements for "good cause shown," as set out in *Hess v. Weinberger*, 363 F.Supp. 262, 267 (E.D.Pa.1973), and *Schad v. Finch*, 303 F.Supp. 595, 599 (W.D.Pa.1969), are therefore satisfied.

Plaintiff's treating physician, Dr. Angelo, provided objective medical evidence indicating that plaintiff could not sit for a period of time sufficiently long to allow her to perform her customary job. He also opined, and Dr. Repicci separately concurred in this aspect of Dr. Angelo's report, that plaintiff could perform " . . . sedentary type of work or light work activity." The record therefore contains contradictory evidence as to plaintiff's physical ability to perform her customary job. Moreover, " . . . additional evidence regarding plaintiff's ability to work arose subsequent to the hearing and the doctor[s] treating [plaintiff] never appeared at the hearing to give adequate testimony regarding her

disability or lack of it . . . ." *Epperly v. Richardson*, 349 F.Supp. 56, 62 (W.D.Va.1972). In Epperly, the court relied upon these two factors in deciding to remand to the Secretary. This is precisely the relief plaintiff seeks, and it seems appropriate.

 The question on remand would be whether, if plaintiff cannot return to her customary job, she is able to engage in any substantial gainful activity. " . . . [I]n the case of an employee who can no longer perform the work he used to do but is not totally disabled the question is what he can do by way of any gainful employment." *Janek v. Celebrezze*, *supra*, at 833. That is, the Secretary must answer two questions: " . . . [W]hat can applicant do, and what employment opportunities are there for a [woman] who can do what applicant can do?" *Kerner v. Flemming*, 283 F.2d 916 (2d Cir. 1960). This is true because,

> Once the claimant has proven the existence of a permanent, although not totally disabling handicap, he "has adduced sufficient evidence to put the burden upon the Secretary to show that a reasonable employment opportunity is available to him."
>
> *Mankiewicz v. Celebrezze*, *supra*, at 353, citing *Bujnovsky v. Celebrezze*, *supra*, at 871.

 The words "any substantial gainful activity" must be read in light of what is reasonably possible, and not what is conceivable. Mere theoretical ability to engage in substantial gainful activity is not enough if no reasonable opportunity for this is available. *Kerner v. Flemming*, *supra*, at 921; *see also*, *Roberson v. Ribicoff*, 299 F.2d 761, 763 (6th Cir. 1962), and *Janek v. Celebrezze*, *supra*, at 833.

Though the record fails to make clear who the speaker was (plaintiff or her daughter who acted as interpreter), there is testimony indicating that her former employer could not find work for plaintiff which was any lighter or more sedentary than plaintiff's customary job of refinishing men's jackets. " . . . the company no wanna give me the light job. They say this is a light job you have before. . . . They say the light work is sewing. We no have other job." In determining the reasonable possibility (and not the mere conceivability) of plaintiff's ability " . . . to engage in any substantial gainful activity . . . " [§ 223(d)(1)(A), 42 U.S.C. § 423(d)(1)(A)], the nature of her customary job and the apparent inability of her former employer to provide plaintiff with a lighter or more sedentary job should be considered.

The Court of Appeals for the Fourth Circuit has cautioned both the Secretary and the courts that where

> . . . . the possibilities of obtaining employment are practically nil, it is no answer that the claimant may be theoretically capable of performing [some jobs] . . . . Employers are concerned with substantial capacity, psychological stability, and steady attendance; they will not unduly risk increasing their health and liability insurance costs.

It said that the question is whether "[i]t is unrealistic to think that they would hire anyone with the impairments of this claimant." *Thomas v. Celebrezze*, 331 F.2d 541, 546 (4th Cir. 1964).

The motion of defendant for summary judgment is denied. The case is remanded to the Secretary for further proceedings.

So ordered.